IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEARL A. ELLIS, Individually | : | CIVIL ACTION |
| and as Administratrix of the | : | NO. 20-06175 |
| Estate of JOSEPH M. ELLIS, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DELAWARE COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              April 26, 2021

## I.   INTRODUCTION

Plaintiff Pearl Ellis brings this § 1983 wrongful death and survival action against Delaware County as the owner and operator of Fair Acres Geriatric Center, as well as William D'Amico and Joseph Travaglini, co-managing agents of Fair Acres (collectively, "Defendants").[1] Plaintiff's claims arise from the allegedly improper care her father received as a Fair Acres resident.

Following a hearing on the record, the Court granted Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim.[2] Plaintiff subsequently filed an Amended

---

[1]    The Amended Complaint also names three John Doe defendants.

[2]    In addition to her § 1983 claims, Plaintiff's original complaint brought claims under Pennsylvania's wrongful death and survival statutes. The Court dismissed the state law claims with prejudice because the Pennsylvania

Complaint, and Defendants' motion to dismiss the Amended
Complaint pursuant to Rule 12(b)(6) is presently before the
Court.

Whether the Amended Complaint should be dismissed turns on
whether Plaintiff has adequately pled <u>Monell</u> liability. As set
forth below, Plaintiff has adequately pled <u>Monell</u> liability
under a failure-to-train theory. However, Plaintiff has not
adequately pled <u>Monell</u> liability under a theory of inadequate
staffing. Therefore, the Court will grant in part and deny in
part the motion to dismiss, such that Plaintiff may seek to
establish <u>Monell</u> liability under a failure-to-train theory but
not under an inadequate staffing theory.

In the alternative, Defendants seek to strike material from
the Amended Complaint pursuant to Rule 12(f). Because Defendants
have not met the Rule's exacting standard, the Court will deny
the motion to strike.

## II.   **BACKGROUND**[3]

Fair Acres Geriatric Center is a skilled nursing facility
in Media, Pennsylvania. Plaintiff's father, Joseph Ellis, became

---

Political Subdivision Tort Claims Act immunizes Defendants from liability for
such professional negligence claims. <u>See</u> 42 Pa. Stat. and Cons. Stat. Ann. §
8541 (West 2021) ("Except as otherwise provided in this subchapter, no local
agency shall be liable for any damages on account of any injury to a person
or property caused by any act of the local agency or an employee thereof or
any other person."). Plaintiff was afforded leave to amend her § 1983 claims,
which she has done.

[3]   When reviewing a motion to dismiss, the Court is "required to accept as

a Fair Acres resident in 2014. Upon his admission, he was deemed to be a high fall risk. Plaintiff alleges Mr. Ellis experienced approximately seventeen falls during his residency at Fair Acres, some witnessed and some unwitnessed.

In January 2018, after Mr. Ellis lost his balance and fell to the ground, Fair Acres did not send him to the hospital for evaluation. In February 2018, a Brief Interview of Mental Status indicated that Mr. Ellis required supervision for bed mobility and assistance for dressing, toileting, personal hygiene, and bathing. However, Fair Acres staff permitted him to continue to roam the facility without assistance or with the use of any assistive devices.

Mr. Ellis had additional falls in March, June, and September of 2018. Fair Acres did not send him to the hospital for evaluation after those falls. On October 26, 2018, he suffered an unwitnessed fall and was found on the ground in his room with two pairs of shoes on his feet. The next day, he suffered a witnessed fall in the hallway in which he fell backwards and struck his head on the ground. He immediately projectile vomited multiple times and was sent to the hospital for evaluation. A CT scan showed scattered acute subarachnoid

---

true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." Conard v. Pa. State Police, 902 F.3d 178, 182 (3d Cir. 2018) (quoting Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)).

hemorrhage. After receiving treatment, he was transferred back
to Fair Acres. Mr. Ellis subsequently experienced severe pain
and a rapid decline in his health. On December 7, 2018, he died.

### III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. See Fed. R. Civ.
P. 12(b)(6). When reviewing such a motion, the Court is
"required to accept as true all allegations in the complaint and
all reasonable inferences that can be drawn from [the
allegations] after construing them in the light most favorable
to the non-movant." Conard v. Pa. State Police, 902 F.3d 178,
182 (3d Cir. 2018) (quoting Jordan v. Fox, Rothschild, O'Brien &
Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)).

However, "the tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to
legal conclusions. Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To
survive a motion to dismiss for failure to state a claim, a
complaint must "contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at
570).

4

**IV.  DISCUSSION**

In the instant Motion, Defendants argue the Court should dismiss the Amended Complaint for failure to state a claim. <u>See</u> Fed. R. Civ. P. 12(b)(6). In the alternative, they ask the Court to strike portions of the Amended Complaint as scandalous, impertinent, and immaterial. <u>See</u> Fed. R. Civ. P. 12(f).

**A.  <u>Motion to Dismiss</u>**

First, Defendants argue the Amended Complaint should be dismissed because Plaintiff fails to plausibly allege violations of 42 U.S.C. § 1983.

"Section 1983 serves as 'a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws.'" <u>Robinson v. Fair Acres Geriatric Ctr.</u>, 722 F. App'x 194, 197 (3d Cir. 2018) (quoting <u>Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel</u>, 570 F.3d 520, 525 (3d Cir. 2009)). "In order to state a claim [under § 1983], a plaintiff must first allege action under the color of state law and a violation of a federally protected right." <u>Id.</u> To state a claim against a municipality, a plaintiff must also plead municipal liability under <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978).

**1.  <u>Color of State Law/Federally Protected Right</u>**

Plaintiff easily satisfies the first aspect of her § 1983

5

claim. First, it is undisputed that Defendants acted under color
of state law, as Fair Acres is owned and operated by Delaware
County.

Second, the Third Circuit held in Grammer, 570 F.3d at 532,
that the Federal Nursing Home Reform Amendments ("FNHRA")
"confer individual rights that are presumptively enforceable
through § 1983."[4] Plaintiff alleges Fair Acres violated FNHRA and
its implementing regulations by, inter alia, failing to
adequately train staff to prevent Mr. Ellis's avoidable falls.
"These factual allegations, taken in the light most favorable to
[the plaintiff], suffice to allege a violation of . . .
federally protected rights under FNHRA." See Robinson, 722 F.
App'x at 199.

    2.   Municipal Liability

The Court turns next to the issue of whether Plaintiff
adequately pleads municipal liability.

"[A] municipality cannot be held liable solely because it
employs a tortfeasor—or, in other words, a municipality cannot

---

[4]      Defendants argue Grammer was wrongly decided and that multiple courts
have rejected its holding. See, e.g., Kalan v. Health Ctr. Comm'n of Orange
Cnty., 198 F. Supp. 3d 636, 644 n.2 (W.D. Va. 2016) ("The court . . . joins a
number of district courts in concluding that the reasoning in Grammer is
contrary to the Supreme Court's holding in Gonzaga.); Fiers v. La Crosse
Cnty., 132 F. Supp. 3d 1111, 1119 (W.D. Wis. 2015) (declining to follow
Grammer and concluding that "the FNHRA does not confer federal rights and,
accordingly, cannot support a cause of action under section 1983"); Hawkins
v. Cnty. of Bent, 800 F. Supp. 2d 1162, 1167 (D. Colo. 2011) ("This Court . .
. believes that the Third Circuit's decision in Grammer is inconsistent with
the strict tests set forth by the Supreme Court . . . ."). However, this
Court is, of course, bound by the Third Circuit's precedential decision.

be held liable under § 1983 on a respondeat superior theory."
Monell, 436 U.S. at 691. "For Fair Acres to be held liable
under § 1983, the alleged violation of [the plaintiff's] rights
must have been caused by action taken pursuant to a municipal
policy or custom." Robinson, 722 F. App'x at 198.

"There are three situations where acts of a government
employee may be deemed to be the result of a policy or custom of
the governmental entity for whom the employee works, thereby
rendering the entity liable under § 1983." Id. (quoting Natale
v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir.
2003)).

First, "an employee's action can be said to result from a
policy or custom 'where the appropriate officer or entity
promulgates a generally applicable statement of policy and the
subsequent act complained of is simply an implementation of that
policy.'" Id. (quoting Natale, 318 F.3d at 584).

Second, "a challenged action can be considered the result
of a policy or custom 'where no rule has been announced as
policy but federal law has been violated by an act of the
policymaker itself.'" Id. (quoting Natale, 318 F.3d at 584).

Finally, courts treat actions as the result of policy or
custom where "the policymaker has failed to act affirmatively at
all" even though "the need to take some action to control the
agents of the government is so obvious, and the inadequacy of

7

existing practice so likely to result in the violation of
constitutional rights, that the policymaker can reasonably be
said to have been deliberately indifferent to the need." <u>Natale</u>,
318 F.3d at 584 (quoting <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v.</u>
<u>Brown</u>, 520 U.S. 397, 417 (1997) (Souter, J., dissenting)).

Beyond conclusory references in the Amended Complaint to "a
custom and policy," Plaintiff does not allege that "the
appropriate officer or entity promulgate[d] a generally
applicable statement of policy and the subsequent act complained
of [wa]s simply an implementation of that policy," nor does she
allege that "federal law has been violated by an act of the
policymaker itself." <u>Robinson</u>, 722 F. App'x at 198 (quoting
<u>Natale</u>, 318 F.3d at 584). Her claim therefore turns on the third
theory of liability—i.e., deliberate indifference. She alleges
Defendants evinced deliberate indifference through (1)
intentional understaffing and (2) failure to properly train
and/or supervise staff. Here, the Third Circuit's
nonprecedential decision in <u>Robinson</u> is instructive, as the
plaintiff in that case advanced the same arguments.

a.   <u>Intentional Understaffing</u>

First, the plaintiff in <u>Robinson</u> alleged that Fair Acres
(the same defendant here) "failed and refused to hire a
sufficient number of trained and competent staff members" to
prevent the plaintiff's injuries. 722 F. App'x at 198. The Third

Circuit found these allegations wanting because, inter alia, the plaintiff failed to sufficiently allege a link between the lack of staff and her injuries since she "alleged that her care was inadequate," not that "staff members were not available or were present too infrequently, for example." Id. at 199.

Here, Plaintiff seeks to distinguish her allegations from those in Robinson, arguing her Amended Complaint "sufficiently pleads a link between the understaffing and Mr. Ellis' avoidable falls, injury and death," including because she alleges that "there were not enough CNAs working on each shift to monitor and provide adequate care to high fall risk residents like Mr. Ellis to prevent avoidable falls." Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 7, ECF No. 24.

For their part, Defendants argue Plaintiff's attempts to distinguish the instant action from Robinson fail because the Robinson court "held that allegations of understaffing do not constitute a sufficient basis to sustain a [§ 1983] claim." Defs.' Mot. Dismiss 15, ECF No. 23-1. This argument overstates the Third Circuit's holding. While the Robinson court noted that the plaintiff "failed to cite any cases in which Monell liability was assessed based on a municipality's failure to hire a sufficient number of staff," 722 F. App'x at 199, the court did not hold that such allegations could never support a § 1983 claim, see id.

9

However, like the plaintiff in <u>Robinson</u>, Plaintiff has failed to cite any cases assessing <u>Monell</u> liability under this theory.[5] Given the <u>Robinson</u> court's evident skepticism about whether inadequate staffing can establish <u>Monell</u> liability[6] and Plaintiff's failure to cite countervailing authority, the Court

---

[5]    Plaintiff points to Judge Schmehl's March 30, 2020, order in <u>Beck v. Lehigh County</u>, No. 19-2909 (E.D. Pa.) and argues the plaintiff in that action "was able to proceed on its § 1983 claims of intentional understaffing against another county run nursing home." Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 8, ECF No. 24. However, the order ruling on the motion to dismiss in <u>Beck</u> does not address whether a plaintiff may rely on an inadequate staffing theory to establish <u>Monell</u> liability and instead focuses on the defendants' arguments that the federal nursing home statute does not create individual rights and that the plaintiff improperly sought to assert claims for a violation of another person's rights. <u>See</u> Order, <u>Beck v. Lehigh Cnty.</u>, 19-2909 (E.D. Pa. Mar. 30, 2020). The parties to that action subsequently settled. <u>See</u> Order, <u>Beck v. Lehigh Cnty.</u>, 19-2909 (E.D. Pa. Apr. 13, 2021).

[6]    The Third Circuit reasoned as follows:

> With respect to her first contention—that Fair Acres failed to hire a sufficient number of staff—Hope failed to sufficiently allege a link between Fair Acres's hiring practices and the injuries she sustained. . . . Under limited circumstances, courts have recognized claims for <u>Monell</u> liability based on a municipality's hiring decisions—in particular "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[s]." <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 411, 117 (1997). But Hope did not allege that any particular staff member's background was so obviously inadequate as to put Fair Acres's administrators on notice of the likelihood that patient injury would result. Instead, she alleged that collectively the hiring was inadequate, without ever pleading how the staff members were insufficient in numbers or quality or how that would have been clear to Fair Acres's administrators. Hope's reference in the Amended Complaint to the amount of registered nursing hours provided relative to other facilities in Pennsylvania and nationwide does not fill the gap. The inference the Estate asks us to draw from these numbers— that because Fair Acres provided fewer registered nursing hours than some, but not all, other facilities, violation of patients' rights was "the plainly obvious consequence," <u>id.</u>—requires too great a leap.

<u>Robinson</u>, 722 F. App'x at 199 (alteration in original).

will grant this aspect of the motion to dismiss. Accordingly,
Plaintiff will not be permitted to proceed under a theory of
intentional understaffing.

        b.    <u>Failure to Train</u>

Next, the plaintiff in <u>Robinson</u> alleged that Fair Acres
demonstrated deliberate indifference through its failure to
properly train and supervise staff. The Third Circuit summarized
the applicable standard as follows:

> In order for a failure-to-train claim to support
> <u>Monell</u> liability, a plaintiff must show "that in light
> of the duties assigned to [the relevant employees,]
> the need for more or different training is so obvious,
> and the inadequacy so likely to result in the
> violation of constitutional rights, that the
> policymakers of the [municipality] can reasonably be
> said to have been deliberately indifferent to the
> need." <u>City of Canton v. Harris</u>, 489 U.S. 378, 390
> (1989). This requires a showing of the policymakers'
> "continued adherence to an approach that they know or
> should know has failed to prevent tortious conduct by
> employees." <u>Bryan Cty.</u>, 520 U.S. at 407. Additionally,
> "for liability to attach in this circumstance the
> identified deficiency in a [municipal]ity's training
> program must be closely related to the ultimate
> injury." <u>Canton</u>, 489 U.S. at 391.

<u>Id.</u> (alterations in original).

The Third Circuit concluded that, even though the plaintiff
"alleged only generally that training was inadequate, the
inadequacy of training can plausibly be inferred from [the
plaintiff's] allegations regarding the number and character of
deficiency citations issued to Fair Acres by federal and state
regulators." <u>Id.</u> at 199-200. The court also concluded that the

alleged deficiencies in the training program (failure to maintain infection control, inter alia) were closely related to the plaintiff's ultimate injuries (infection, gangrene, and the loss of her leg). Id. at 200. The court therefore determined that she sufficiently pled a § 1983 claim under a failure-to-train theory of liability. Id.

Here, too, Plaintiff's Amended Complaint, construed in the light most favorable to her, alleges Defendants failed to adequately train and/or supervise staff. Plaintiff points to numerous deficiency citations Fair Acres received from the Pennsylvania Department of Health during the relevant time period, including for failure to implement a care plan developed to address falls, failure to ensure the adequacy of assessments, and many other patient care issues. The alleged inadequacy of staff training "can plausibly be inferred from [the plaintiff's] allegations regarding the number and character of deficiency citations issued to Fair Acres." See id. at 199-200. The alleged deficiency is also closely related to the ultimate injury, as Plaintiff plausibly alleges that improper care planning contributed to Mr. Ellis's falls, head injury, and death.

For these reasons, Plaintiff's allegations, if true, could establish that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the

12

[municipality] can reasonably be said to have been deliberately indifferent to the need." Id. at 199 (alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

Accordingly, the Court will deny this aspect of the motion to dismiss and will permit Plaintiff to proceed under a failure-to-train theory.

### B.   **Motion to Strike**

In the alternative, Defendants move to strike from the Amended Complaint all averments related to understaffing, as well as portions of the pleading that refer to Fair Acres's deficiency citations.

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "[S]triking a portion of a pleading is a drastic remedy," and Rule 12(f) motions "are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2021). To succeed, a movant must show that "the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration" and that "their presence in the pleading throughout the proceeding will be prejudicial to the moving party." Id.

Defendants argue that because allegations of insufficient staffing do not create a cognizable basis for Plaintiff's § 1983 claim, see supra Section IV.A.2.a, such allegations should be stricken as immaterial and impertinent. They also ask the Court to strike references to the deficiency citations in the Amended Complaint, arguing those references are immaterial and impertinent because "it has not been established that any of the cited survey reports are relevant or have any relation to the specific care put at issue by Plaintiff." Defs.' Mot. Dismiss 21, ECF No. 23-1.

At this early stage of the litigation, the Court cannot say that the challenged allegations are unrelated to Plaintiff's claims. In fact, it appears the veracity of the deficiency citations will go to the heart of Plaintiff's ability to establish deliberate indifference in this case. See supra Section IV.A.2.b. Accordingly, the Court will deny the motion to strike.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss and will deny the alternative motion to strike.